**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:15-CV-00068-CHL**

**TIMOTHY E. MCQUEARY,**                                                     **Plaintiff,**

**v.**

**CAROLYN W. COLVIN, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION,**                     **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Dismiss (DN 13) filed by defendant Commissioner of Social Security ("Commissioner"). Commissioner seeks to dismiss the complaint of plaintiff Timothy E. McQueary ("McQueary") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction. McQueary filed a response. (DN 15). Therefore, this matter is ripe for review.

The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (*See* DN 17). For the reasons below, the Court will grant the motion to dismiss.

**I. BACKGROUND**

On July 15, 2002, Plaintiff Timothy E. McQueary filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On September 18, 2002, the Social Security Administration ("SSA") denied that application based on medical grounds. (DN 13, p.1). McQueary did *not* seek further review of that denial. Due to McQueary's failure to seek further review, the September 18, 2002 initial determination became binding. *Id.*

On July 20, 2009, McQueary filed an application for DIB stating that he became "unable to work because of [his] disabling condition on January 1, 2008." (DN 9-5, p.2). The SSA sent a notice to McQueary on August 4, 2009 that he did not qualify for disability due to the fact that he lacked the sufficient work credits under Title II of the Act. (DN 9-4, p.2). Although McQueary failed to qualify for DIB under Title II of the Act, SSA sent a Notice of Award on January 22, 2010 informing him that he was eligible to receive Supplemental Security Income ("SSI") payments under Title DIB of the Act. (*Id.* at 23). The notice explains that McQueary was eligible for SSI beginning on July 23, 2009, and that he was entitled to back payments from August 2009 through January 2010. (*Id.* at 24). McQueary is currently receiving those benefits.

On September 30, 2011, McQueary filed another application for DIB, this time claiming that he had been disabled since July 30, 2000. (DN 9-5, p. 4). The SSA notified McQueary on December 29, 2011 that he did not qualify for disability benefits because he was not disabled under their rules. (DN 9-4, p. 6). After this notice denying him benefits, McQueary submitted a Request for Reconsideration on February 14, 2012. (*Id.* at 10). McQueary stated that he disagreed with the determination made on his claim because he "had enough work credits in 2002 and should have been approved." *Id.* On February 20, 2012, SSA notified McQueary that his request for reconsideration had been denied. (*Id.* at 11). SSA explained that in order for McQueary to qualify for DIB, the evidence must show that his disability began on or before June 30, 2003, which was the day that he last met the earnings requirement for Social Security Disability Insurance Benefits. *Id.* SSA cited evidence from the Veterans Administration Hospital showing that McQueary *claimed* that he became disabled on July 30, 2000 due to PTSD, emotional problems, and a crushed and amputated left foot. *Id.* However, SSA disagreed with McQueary's claim and indicated that the medical evidence in McQueary's file was

2

insufficient to establish the presence of any condition which would have kept him from working on or before July 30, 2003. *Id.*

After his request for reconsideration was denied, McQueary submitted a Request for a Hearing by an Administrative Law Judge ("ALJ") on March 5, 2012, stating that he disagreed with the SSA's determination and that he believed that his work credits "were in effect until June 30, 2003." (*Id.* at 14). A Hearing Notice sent to McQueary in February provided that his hearing before the ALJ would be held on March 21, 2013. (DN 9-2, p. 27). The notice stated that during the hearing, the ALJ would consider whether McQueary was "disabled" under the provisions of the Act, and whether he had enough earnings to be insured for DIB. (*Id.* at 29). The notice also stated that SSA records indicated McQueary's "date last insured" to be June 30, 2003, and that the ALJ would have to find McQueary to be disabled on or before that date. *Id.* McQueary failed to appear at the March 21, 2013 hearing, due to the Hearing Notice being sent to the wrong address. (DN 9-4, p. 59; DN 9-4, p. 61). McQueary was then notified at the proper address that the hearing would be rescheduled to August 5, 2013. (DN 9-2, p. 16). The notice contained the same information as the notice for the prior hearing.

On August 5, 2013, McQueary, appeared pro se at the hearing in front of the ALJ . (DN 9-2, p.28). The ALJ outlined that he would have to come to the determination that McQueary had been "disabled" under the Act on or before July 30, 2003. (*Id.* at 40). During the hearing, McQueary indicated that he had been disabled since July 30, 2000 and referenced an application from the year 2000; although it is likely that he was actually referring to his 2002 DIB application. (*Id.* at 41). The ALJ acknowledged that he had information that McQueary had applied for DIB in 2009, clarified that July 30, 2000 was the "alleged onset date" of last insured,

3

and restated that the purpose of the hearing was for McQueary to prove that he was disabled on or before July 30, 2003 in order to receive insured benefits. (*Id.* at 41-42).

On August 27, 2013, the ALJ issued his decision finding that McQueary was disabled based on his current application which was originally filed in 2011. (*Id.* at 9). Furthermore, the ALJ found that McQueary's earnings record showed that he had acquired sufficient quarters of coverage to remain insured through July 30, 2003, the alleged onset date. *Id.* Although the ALJ found McQueary to be disabled from July 30, 2000 through the date of his decision, he expressly found no "basis for reopening claimant's prior Title II application." *Id.* (citing 20 C.F.R. §404.988).

On September 19, 2013, McQueary submitted a Request for Review of Hearing Decision/Order requesting "a reopening of the prior title 2 application from 08/07/2002 with a protective filing of 07/23/2002." (DN 9-2, p.5). The request states that "[McQueary] was told he was not able to appeal the decision because he was not insured for Title [II] benefits." *Id.* On December 24, 2014, SSA Appeals Council notified McQueary that his request for review of the ALJ's August 2013 decision was denied, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 2).

On January 15, 2015, McQueary filed a complaint (DN 1), which is entitled "COMPLAINT FOR JUDICIAL REVIEW OF A DECISION OF THE COMMISSIONER OF SOCIAL SECURITY." McQueary's allegations in the complaint are not entirely clear. McQueary indicates that his claim is for "Disability 2002." (DN 1). McQueary also alleges that the "final decision of the Commissioner was erroneous, not supported by substantial evidence in the record, and/or contrary to the law." (*Id.* at 2). On April 15, 2015, Commissioner filed a Motion for More Definite Statement, asking McQueary to clarify his claim. (DN 9). McQueary

responded on April 23, 2015 stating "in [A]rticle 7 it states, it finds the claimant did not have insured status, but earnings were credited to his earnings record to correct errors apparent on the face of earnings record." (DN 15).

The best the Court can tell, McQueary requests back payment from his 2002 DIB application. He argues that although the SSA indicated that he did not have enough work credits as the reason for the denial of his application and his attempt to appeal, he actually did satisfy the work credits requirement because the earnings were later credited to his earnings record. McQueary did not submit any other documents in his complaint. He did include the Appeals Council's December 2014 Denial in his Response to Motion for More Definite Statement. (DN 15, p. 2). Commissioner submitted McQueary's "Administrative Record," consisting of numerous documents and exhibits which include: (1) August 5, 2013 Transcript of Oral Hearing (DN 9-2, p. 38); (2) August 27, 2013 ALJ Hearing Decision (DN 9-2, p. 6); (3) September 19, 2013 Request for Review of Hearing Decision/Order (HA 520) (DN 9-2, p. 5); (4) December 14, 2014 Appeals Council Denial (DN 9-2, p. 2); July 30, 2009 Application for Disability Insurance Benefits (DN 9-5, p. 2); and September 30, 2011 Application for Disability Insurance Benefits (DN 9-5, p.4).

## II. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. Federal Rule of Civil Procedure 12(b)(1) provides that a party may file a motion asserting "lack of subject-matter jurisdiction." Fed.R.Civ.P. 12(b)(1). "Subject matter jurisdiction is always a threshold determination," *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir.2007) (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)), and "may be raised at any stage in the proceedings," *Schultz v. General R.V. Center*, 512 F.3d 754, 756 (6th Cir.2008).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Ritchie*, 15 F.3d at 598; *see also Cartwright*, 751 F.3d at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the Court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis.").

"A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Ritchie*, 15 F.3d at 598. No presumptive truthfulness applies to the factual allegations. *Id.* "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright*, 751 F.3d at 759-60. The plaintiff bears the burden of proving subject matter jurisdiction exists. *Id.* at 760.

The Commissioner asserts that the present Motion to Dismiss is a factual attack on the Court's subject matter jurisdiction. Therefore, the Court need not presume the truthfulness of the allegations in the complaint and instead must examine the facts and determine whether subject matter jurisdiction does or does not exist. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In doing so, the Court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* Thus, in

determining whether subject matter jurisdiction exists, the Court will consider the all of the documents submitted to the Court.

### III. DISCUSSION

The Commissioner interprets McQueary's complaint as seeking back payment from his 2002 DIB application which was denied on initial determination. (DN 13, p. 2). McQueary did not challenge this assertion.

The Commissioner states that because McQueary failed to appeal the 2002 DIB application, the only way in which McQueary could seek to challenge the agency's denial of that application would be by requesting a reopening of that application. Commissioner argues that the ALJ's decision that there was no basis to reopen the 2002 determination is not a "final decision" from the SSA as required to obtain judicial review by a federal district court. Commissioner also argues that McQueary has not presented a "colorable constitutional violation." Accordingly, Commissioner requests that McQueary's complaint should be dismissed for lack of subject matter jurisdiction

In Response, McQueary requests that the Court not dismiss his complaint. McQueary further states, "In fact this court does have the jurisdiction to review plaintiffs claim, due to implied civil rights violation, claimant was denied due process." (DN 15). The Court will discuss each argument in turn.

**A. Judicial Review Is Permitted When A Final Decision Is Made by the Commissioner**

Where a statute creates a right and provides a special remedy, that remedy is exclusive. *See United States v. Babcock*, 250 U.S. 328, 331 (1919) ("These general rules are well settled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. (2) That where a statute creates a right and

7

provides a special remedy, that remedy is exclusive.") (internal citations omitted). Here, the Act creates a right and provides a special remedy.

A federal district court's jurisdiction to review the Commissioner's decisions regarding Social Security disability benefits is governed by 42 U.S.C. §§ 405(g) and (h). *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 395 (6th Cir. 1991). 42 U.S.C. §405(g) states that "[a]ny individual, *after any final decision* of the Commissioner of Social security made after a hearing to which he was a party, irrespective of the amount in controversy, *may obtain a review of such decision by a civil action commenced within sixty days* after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §405(g) (emphasis added).

42 U.S.C. § 405(h) states:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

The requirement of a final decision is not waivable by the parties. *Willis*, 931 F.2d at 396 (citing *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975)); *see also Califano v. Sanders*, 430 U.S. 99, 108 (1977) ("This provision clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'"). The term 'final decision' is not defined in the Social Security Act and "its meaning is left to the [Commissioner] to flesh out by regulation." *Salfi*, 422 U.S. at 766. The issue here is whether or not the ALJ's decision to deny reopening of McQueary's 2002 DIB application constitutes a "final decision."

8

The regulations set forth a four-step process by which a claimant can exhaust his administrative remedies and obtain a judicially-reviewable final decision. *See* 20 C.F.R. § 404.900(a). First, a claimant is entitled to an initial determination of disability. *Id*.; *Willis*, 931 F.2d at 397. Second, if dissatisfied with the initial determination, the claimant may request a reconsideration of that initial determination. *Id.* Third, if dissatisfied with the reconsideration determination, the claimant may request an evidentiary hearing before an ALJ. *Id.* Fourth, if dissatisfied with the ALJ's decision, the claimant may request that the Appeals Council review the ALJ's decision. *Id.* When a claimant has completed these steps in the administrative review process, the Commissioner will have made her final decision, and the claimant may request judicial review by filing an action in the appropriate federal district court. *Id.* Simply, "for purposes of the finality requirement of § 405(g), a claim becomes final after the Appeals Council renders its decision." *Willis,* 931 F.2d at 397.

### 1. ALJ's Decision Not to Reopen Prior Application

This Court agrees with the Commissioner that the clear and express decision of the ALJ to not reopen McQueary's 2002 DIB claim is not considered a "final decision" subject to review under 42 U.S.C. §405(g). In *Califano*, the Supreme Court considered whether, under 42 U.S.C. § 405(g), a claimant could appeal an ALJ's decision to deny a reopening of an application for social security benefits. 430 U.S. at 107. The Supreme Court held that the statute could not be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for disability income benefits. *Id*. at 107–08; *Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 314 (6th Cir. 2004). The Supreme Court explained that the statute restricts judicial review to a *final decision* of the Commissioner made after a hearing. *Califano*, 430 U.S. at 107-08.

Furthermore, a petition to reopen a prior final decision may be denied by the Commissioner without a hearing. *Glazer*, 92 F. App'x at 314 (citing *Califano*, 430 U.S. at 108-109).

The ALJ's decision not to reopen McQueary's prior application was within the ALJ's discretion and did not require a hearing. *See Califano*, 430 U.S. at 107–08; *Bogle*, 998 F.2d 342, 346 (6th Cir.1993); *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 357 (6th Cir. 2013). Therefore, the ALJ's refusal to reopen the administratively final decision from 2002 was not a "final decision … made after a hearing." 42 U.S.C. §405(g). Absent any colorable constitutional claim, this Court lacks subject matter jurisdiction to review the Commissioner's decision not reopen. *Glazer*, 92 F. App'x at 314; *see Cottrell v. Sullivan*, 987 F.2d 342, 345 (6th Cir.1992).

### 2. Colorable Constitutional Violation

This Court agrees with the Commissioner that McQueary does not present evidence of any colorable constitutional violation. When jurisdiction is not available under §405(g), the district court may also review the Commissioner's decision if the plaintiff alleges a *colorable claim of unconstitutionality*. *See Califano*, 430 U.S. at 109; *Bogle v. Sullivan*, 998 F.2d 342, 346 (6th Cir.1993). McQueary argues that he presents a colorable constitutional claim because he was denied due process of the law. (DN 15). However, the use of constitutional language to "dress up" a claim of abuse of discretion in refusing to reopen an application does not create a colorable constitutional challenge. *Glazer*, 92 F. App'x at 314 (citing *Ingram v. Sec'y of Health & Human Servs.*, 830 F.2d 67, 67–68 (6th Cir.1987)).

McQueary has not put forth any argument supporting his claim that the Commissioner's decision violated his due process rights. Because McQueary has not sufficiently alleged a colorable constitutional violation, this Court lacks subject matter jurisdiction to review the Commissioner's decision. Therefore, the Court will grant the Commissioner's motion to dismiss

for lack of subject-matter jurisdiction. The Court will dismiss McQueary's complaint, without prejudice.

### IV. CONCLUSION

The Court **GRANTS** the Commissioner's motion to dismiss for lack of subject-matter jurisdiction (DN 13). *Revere v. Wilmington Finance*, 406 Fed.Apprx. 936, 937 (6th Cir.2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case. It is true that, in rare cases where a district court lacks jurisdiction, the court may dismiss a claim with prejudice 'as a sanction for misconduct.'"). But there was no find of misconduct here. The Court **DISMISSES** McQueary's complaint, without prejudice.

This is a final and appealable order, and there is no just reason for delay.